IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs November 3, 2021

## JOSHUA HILL-WILLIAMS v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County
Nos. 14-03966, 13-146776 John Wheeler Campbell, Judge**

_____

### No. W2021-00090-CCA-R3-PC
_____

Petitioner, Joshua Hill-Williams, was convicted of first degree premeditated murder. His conviction was affirmed on direct appeal. *State v. Joshua Hill-Williams*, No. W2015-01743-CCA-R3-CD, 2017 WL 1907735, at \*8 (Tenn. Crim. App. May 9, 2017), *perm. app. denied* (Aug. 18, 2017). Petitioner filed a pro se petition for post-conviction relief and an amended petition through counsel, alleging nine claims of ineffective assistance of counsel. The post-conviction court denied relief and Petitioner now appeals. After review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, P.J., and NORMA MCGEE OGLE, J., joined.

Tony N. Brayton (on appeal) and John K. Zastrow (at hearing), Memphis, Tennessee, for the appellant, Joshua Hill-Williams.

Herbert H. Slatery III, Attorney General and Reporter; Brent C. Cherry, Senior Assistant Attorney General; Amy P. Weirich, District Attorney General; and Leslie Byrd, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

In 2013, Petitioner shot and killed the victim, Evvann "Juice" Harris, in Memphis. The Shelby County Grand Jury indicted Petitioner with one count of first degree premeditated murder. Following trial, Petitioner was convicted as charged and received an effective life sentence. Petitioner appealed his conviction, and this Court affirmed. *Joshua Hill-Williams*, 2017 WL 1907735, at \*13.

The following facts were summarized by this Court on direct appeal. On December 16, 2013, Petitioner let the victim into his house and the victim stole Petitioner's gun. *Id.* at *1. Petitioner dialed 911. *Id.* Petitioner told the police officer that he allowed the victim into his house because he knew him. *Id.* Petitioner described his stolen weapon as a Glock 19 with a gun serial number of LGA460. *Id.* Three days later, Petitioner visited the Memphis Police Department ("MPD") and gave the victim's name to the police. *Id.*

On December 21, 2013, around 4:00 p.m., Petitioner went to an apartment at the Barron Court apartment complex. *Id.* at *7. The victim was at the apartment visiting some friends. *Id.* at *1. Petitioner shot the victim several times and fled the scene. *Id.* at *7. When police arrived, they cut off the victim's clothes and attempted to render aid. *Id.* at *1. The victim did not survive his 8 gunshot wounds. *Id.*

Latrice Mills testified that she was driving in the area where the shooting occurred around 4:15 p.m. and saw multiple men exit an apartment and run to a vehicle. *Id.* at *2. Ms. Mills stated that the car "fl[ew] past" her and seemed like it "was trying to get away from the scene." *Id.*

Eldridge Bobo testified that he was at the apartment with multiple people, including the victim. *Id.* He said that he received a phone call from a friend named "Albert." *Id.* Mr. Bobo testified that he told Albert the names of the individuals at the apartment and that thirty minutes later, someone entered the apartment and began firing a gun. *Id.*

MPD Officer Charles Webb testified that he drove Petitioner from Petitioner's house to the police department. *Id.* at *4. Petitioner consented to a search of his cell phone. *Id.* Officer Webb compiled a summary of Petitioner's phone logs and found several messages linking him to the shooting. *Id.* at *5. Relevant to this appeal, there was a chain of messages between Petitioner and "Bro." *Id.* In the message log, Petitioner asked Bro for the location of a "9." *Id.* In a later message, Bro texted Petitioner, "'[F]rom what Albert telling me, [he] say [the victim] be over there [at the apartment] all the time.'" *Id.*

Petitioner filed a timely pro se petition for post-conviction relief, alleging several claims of ineffective assistance of counsel and arguing that the cumulative error doctrine entitled him to post-conviction relief. Petitioner was appointed counsel and subsequently filed an amended petition, incorporating by reference the claims contained in his pro se petition. Petitioner's amended petition alleged nine deficiencies of trial counsel, some of which were included in the pro se petition. Petitioner filed an addendum to the amended

petition, incorporating his prior petitions and raising two additional claims of ineffective assistance of counsel.

*Post-conviction Hearing*

The post-conviction court held a virtual evidentiary hearing due to the Covid-19 pandemic. In a varied, disjointed and rambling fashion, Petitioner attempted to state his dissatisfaction with trial counsel. Petitioner testified that trial counsel should have created discovery "cheat sheets" for Petitioner to prepare himself for trial. In response to the question "did she [trial counsel] prepare you at all," Petitioner responded, "I mean, basically, we were prepared for a murder trial, but then the -- the cheat sheets and everything that we didn't possess or know -- well, I ain't know about that [sic] the prosecutor did, was basically just to show up and testify." Petitioner then immediately testified that trial counsel adequately communicated with him to help prepare his defense.

Petitioner testified that trial counsel met with him numerous times. Petitioner said trial counsel told him that her investigator could not locate some of the witnesses. Petitioner admitted that trial counsel talked to him generally about "the evidence." Petitioner repeatedly mentioned that trial counsel failed to provide him with a "cheat sheet," never providing an explanation for what he meant by such an item.

Petitioner testified that prior to trial, he was not aware of the State's witness, Latrice Mills, or her testimony that she saw Petitioner "running down the street" and getting into a vehicle. He claimed that he asked trial counsel to find the victim's phone and review its contents, but she did not.

Petitioner testified that trial counsel was ineffective for failing to call Albert Boone as a witness. Petitioner was unsure whether trial counsel attempted to locate Mr. Boone. Petitioner claimed that if Mr. Boone had testified, it "most definitely" would have changed the trial. When asked whether Mr. Boone's testimony would have rebutted the State's premeditation argument, Petitioner responded in the affirmative.

Petitioner testified that he did not fully understand the charges against him and that trial counsel did not explain the entire indictment. Specifically, Petitioner did not understand why there were charges "like trespassing, burglary, stuff like that. Like in the premeditation one." Petitioner complained that trial counsel did not discuss the potential range of punishments with him. Petitioner acknowledged that trial counsel discussed a plea deal with him.

Petitioner believed however, that if his case proceeded to trial, he might receive a "decent outcome." Petitioner attempted to explained that, "[B]ased on the -- the evidence

and the other added thing that the prosecutor presented at trial, it -- it just overwhelmed my whole defense team and it's what caused my sentence." Petitioner testified that trial was really his only option because the plea deal was unsatisfactory. Petitioner stated, "So by them offering [] 36 [years] at 85 percent, I mean, they left me no type of -- [choice.]"

When asked whether he believed trial counsel properly represented him on appeal, Petitioner said, "[s]o basically, I believe she did." Petitioner testified that trial counsel visited him on numerous occasions to discuss Petitioner's post-trial options.

Petitioner said, "Just, I believe, you know, she did the best to her abilities, but, you know, based on what the prosecutor presented we -- we wasn't set for success, however."

On cross-examination, Petitioner admitted that "he never had contact with [Mr.] Boone since . . . this case took place . . . [and he] was [never] able to get in contact with him." Petitioner testified that he asked trial counsel to find Mr. Boone but that "[s]he didn't find him."

On re-direct examination, post-conviction counsel asked Petitioner if he would have gone to trial had he known he would receive a life sentence. Petitioner said no. Post-conviction counsel asked Petitioner if he remembered post-conviction counsel searching for Mr. Boone. Petitioner said he remembered that post-conviction counsel also could not locate Mr. Boone.

Petitioner said he thought he was prepared to testify, but "apparently" he was not ready. Post-conviction counsel asked Petitioner whether trial counsel performed a "mockup cross-examination," and Petitioner said no. Post-conviction counsel asked whether trial counsel explained the consequences of testifying to Petitioner. Petitioner said yes.

Trial counsel testified that she had practiced law for roughly 17 years. During those years, she had represented clients in mostly criminal cases. Trial counsel estimated that she had tried five or six first degree murder cases. Trial counsel testified that she typically first reviewed discovery and range of punishments with new clients.

Trial counsel testified that she attempted to negotiate a plea agreement before the indictment, but the discussions never proved fruitful. Trial counsel said she believed that she and co-counsel should look at the discovery and "see how the case developed." Trial counsel did eventually obtain a plea deal and discussed it with Petitioner. She recalled that the victim's family also had to approve of the agreement, and because they did not, Petitioner's case proceeded to trial.

- 4 -

Trial counsel testified that Petitioner "is a smart guy."  Trial counsel said she felt "fairly positive that [Petitioner] knew that [the punishment for first degree murder] was a life sentence if he was convicted."

Trial counsel testified that she hired an investigator.  Trial counsel said that she would approach Petitioner with any new information that would be harmful to his self-defense testimony.  Trial counsel recalled going over Petitioner's "potential testimony several times."  Trial counsel believed Petitioner "did pretty well when he testified, and [she] thought he was very polite and steady during his cross-examination."  Trial counsel admitted that "it was an aggressive cross-examination."

Trial counsel testified that Albert Boone's name arose for the first time at trial.  Trial counsel recalled a witness testifying that Mr. Boone told Petitioner over the phone that the victim was at the apartment with Mr. Boone.  Trial counsel described Mr. Boone as "a semi-homeless guy[]" who would sleep on "people's couches."  Trial counsel said that after the witness testified, she "went through [Petitioner's] phone logs with a fine-tooth comb and [she] did not see anything that night and [she] did not see anything that was going to help [them]."

Trial counsel testified that she attempted to recover the victim's cell phone.  However, because the victim's family had possession of the cell phone and the police officers had not downloaded the data, she was unable to get the information from the phone.

On cross-examination, post-conviction counsel asked trial counsel if she remembered two phone numbers in Petitioner's cell phone that were attached to a "Little Albert."  Trial counsel said that she did not remember, but if the numbers were in the discovery, then she believed post-conviction counsel.  Trial counsel admitted that she did not attempt to locate Mr. Boone based on those phone numbers.  Trial counsel stated that she did not ask for a continuance to locate Mr. Boone because it was during the middle of trial.

Trial counsel testified regarding the cheat sheet.  Specifically, trial counsel said she did not prepare a cheat sheet for any client and had not heard of that practice.  Trial counsel testified she typically would give a defendant discovery materials.  Trial counsel admitted that she did not attempt to organize the discovery for Petitioner.  On redirect examination, trial counsel testified that she met with Petitioner "quite a bit" and went over the important discovery information that was relevant to his defense.

Following the post-conviction hearing, the post-conviction court denied relief in a thorough written order.  The post-conviction court determined that trial counsel was

prepared for trial and had adequately shared discovery with Petitioner. The post-conviction court noted that Petitioner failed to offer any evidence that trial counsel was unaware of favorable facts that could have helped Petitioner's defense. The post-conviction court found that Petitioner offered no proof "that a witness existed, who could have been called, that would have changed the outcome of the trial had that witness testified at trial." The court found that Petitioner failed to show that trial counsel was deficient or that trial counsel's actions prejudiced Petitioner. Petitioner now appeals.

*Analysis*

Petitioner argues on appeal that the post-conviction court erred in denying him relief. Specifically, Petitioner claims trial counsel was ineffective for: 1) failing to adequately prepare Petitioner's case for trial; 2) failing to prepare Petitioner for trial; and 3) "failing to call or even make any effort to find a crucial witness for trial." The State correctly notes that Petitioner abandons all other claims raised in his post-conviction petition and at the hearing.[1] The State argues that the post-conviction court properly denied relief and that Petitioner failed to prove his claims by clear and convincing evidence.

Post-conviction relief is available for any conviction or sentence that is "void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103. In order to prevail in a claim for post-conviction relief, a petitioner must prove his factual allegations by clear and convincing evidence. T.C.A. § 40-30-110(f); *Momon v. State*, 18 S.W.3d 152, 156 (Tenn. 1999). "Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *Hicks v. State*, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998). On appeal, a post-conviction court's findings of fact are conclusive unless the evidence preponderates otherwise. *Vaughn v. State*, 202 S.W.3d 106, 115 (Tenn. 2006). Accordingly, questions concerning witness credibility, the weight and value to be given to testimony, and the factual issues raised by the evidence are to be resolved by the post-conviction court, and an appellate court may not substitute its own inferences for those drawn by the post-conviction court. *State v. Honeycutt*, 54 S.W.3d 762, 766-67 (Tenn. 2001). However, the post-conviction court's conclusions of law and application of the law to the facts are reviewed under a purely de novo standard, with no presumption of correctness. *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001).

---

[1] *See Ronnie Jackson, Jr. v. State*, No. W2008-02280-CCA-R3-PC, 2009 WL 3430151, at *6 n.2 (Tenn. Crim. App. Oct. 26, 2009) (determining claims raised in the trial court but not raised on appeal are deemed abandoned), *perm. app. denied* (Tenn. Apr. 16, 2010).

Both the Sixth Amendment to the Constitution of the United States and article I, section 9 of the Tennessee Constitution guarantee the right of an accused to the effective assistance of counsel. *See Davidson v. State*, 453 S.W.3d 386, 392-93 (Tenn. 2014). In order to sustain a claim of ineffective assistance of counsel, a petitioner must demonstrate that counsel's representation fell below the range of competence demanded of attorneys in criminal cases. *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). Under the two-prong test established by *Strickland v. Washington*, 466 U.S. 668, 687 (1984), a petitioner must prove that counsel's performance was deficient and that the deficiency prejudiced the defense. *See State v. Taylor*, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that the same standard for determining ineffective assistance of counsel applied in federal cases also applies in Tennessee). Because a petitioner must establish both elements in order to prevail on a claim of ineffective assistance of counsel, "failure to prove either deficient performance or resulting prejudice provides a sufficient basis to deny relief on the claim." *Henley v. State*, 960 S.W.2d 572, 580 (Tenn. 1997). "Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component." *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996) (citing *Strickland*, 466 U.S. at 697).

The test for deficient performance is whether counsel's acts or omissions fell below an objective standard of reasonableness under prevailing professional norms. *Strickland*, 466 U.S. at 688; *Henley*, 960 S.W.2d at 579. This Court must evaluate the questionable conduct from the attorney's perspective at the time, *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982), and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," *State v. Burns*, 6 S.W.3d 453, 462 (Tenn. 1999). This Court will not use hindsight to second-guess a reasonable trial strategy, even if a different procedure or strategy might have produced a different result. *See Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994); *Williams v. State*, 599 S.W.2d 276, 279-80 (Tenn. Crim. App. 1980). However, this deference to the tactical decisions of trial counsel is dependent upon a showing that the decisions were made after adequate preparation. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

Even if a petitioner shows that counsel's representation was deficient, the petitioner must also satisfy the prejudice prong of the *Strickland* test in order to obtain relief. The question is "whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). A petitioner must show that there is a reasonable probability "sufficient to undermine confidence in the outcome" that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Burns*, 6 S.W.3d at 463 (quoting *Strickland*, 466 U.S. at 694).

*Failure to Prepare Petitioner for Trial*

Petitioner complains that the post-conviction court improperly evaluated trial counsel's effectiveness in preparing Petitioner for trial. Specifically, Petitioner contends that trial counsel did not sufficiently review the indictment with him and that Petitioner did not fully understand his first degree murder charge or the severity of its punishment. The State responds that the post-conviction court properly denied relief and that Petitioner failed to prove his claim by clear and convincing evidence. We agree with the State.

The post-conviction court found that trial counsel was prepared for trial. The post-conviction court found that the proof established trial counsel received full discovery and shared the relevant evidence with Petitioner. Petitioner himself admitted that trial counsel visited him "numerous" times prior to trial and that Petitioner even thought he was ready for trial. Petitioner testified generally that he did not fully understand the indictment or the charge against him. However, Petitioner testified that the only testimony at trial which surprised him was that of Latrice Mills.

Trial counsel recalled her normal practice when she met with new clients included reviewing the discovery and range of punishment. Trial counsel testified she felt "fairly positive" that Petitioner understood his punishment if he were convicted. Trial counsel acknowledged the State's cross-examination was aggressive, but recalled that Petitioner acted "very polite and steady" during the cross-examination.

Petitioner has failed to show that the evidence preponderates against the post-conviction court's finding that trial counsel adequately prepared him for trial by providing him with important information about his self defense. *Momon*, 18 S.W.3d at 156. Petitioner has failed to establish that trial counsel was deficient or that he was prejudiced by the alleged deficiency. Petitioner is not entitled to relief.

*Failure of Trial Counsel to Adequately Prepare for Trial*

Petitioner argues that the post-conviction court improperly assessed trial counsel's effectiveness in preparing for trial. The State argues that the post-conviction court properly denied relief. We agree with the State.

Again, the post-conviction court found that trial counsel was prepared for Petitioner's jury trial. Trial counsel received full discovery and provided it to Petitioner. Petitioner presented no evidence at the post-conviction hearing that trial counsel knew of any additional information that would have supported Petitioner's defense. Trial counsel hired an investigator to help gather information for Petitioner's defense. Trial counsel

met with Petitioner "numerous" times to review his case and discuss the proof. The evidence does not preponderate against the post-conviction court's findings. *Vaughn*, 202 S.W.3d at 115. Petitioner is not entitled to relief.

*Failure to Locate a Key Witness*

Petitioner argues that the post-conviction court erred in finding that trial counsel was not ineffective for failing to locate Albert Boone. The State argues that because Petitioner failed to locate Mr. Boone or offer his testimony at the post-conviction hearing, references to Mr. Boone's testimony are "pure speculation." We agree with the State.

The post-conviction court found no proof that a witness existed who "would have changed the outcome of the trial had that witness testified at trial." Petitioner did not present Mr. Boone's testimony at the post-conviction hearing but merely posited as to Mr. Boone's potential testimony. Because Petitioner failed to present Mr. Boone's testimony at the post-conviction hearing, Petitioner cannot establish prejudice. *See Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). This Court cannot speculate as to how Mr. Boone's testimony would have affected the outcome of Petitioner's case. Petitioner has failed to establish prejudice and is, therefore, not entitled to relief.

*Conclusion*

For the foregoing reasons, the judgment of the post-conviction court is affirmed.

_____

TIMOTHY L. EASTER, JUDGE